**OREGON SHORT LINE R. CO. et al. v. UNITED STATES.**

**No. 10675.**

Circuit Court of Appeals, Ninth Circuit.
Oct. 6, 1944.

Rehearing Denied Nov. 6, 1944.

H. B. Thompson, of Salt Lake City, Utah, and L. H. Anderson, of Pocatello, Idaho, for appellants.

Norman M. Littell, Asst. Atty. Gen., and Norman MacDonald and John C. Harrington, Attys. Dept. of Justice, both of Washington, D. C., and John A. Carver, U. S. Atty., and E. H. Casterlin, Asst. U. S. Atty., both of Boise, Idaho, for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The United States brought this suit on behalf of the Shoshone and Bannock Tribes of Indians to recover from appellant Railroad Companies and their surety damages accruing by reason of the killing of two of the Indians and the injury of a third in a crossing accident occurring within the limits of the Fort Hall Reservation. The

2

appeal is from a verdict and judgment in favor of the United States.

The suit proceeds under authority of the Act of September 1, 1888, 25 Stat. 452. The terms of that Act and the nature of the obligations imposed by it are discussed at length in the opinion of this court in United States v. Oregon Short Line Railroad Company, 9 Cir., 113 F.2d 212, where we held that the Act imposes on the railroad company liability independent of negligence. In the interest of brevity we shall not again go over the field covered by that decision.

The facts material to relate are these. The accident occurred between 5 and 6 o'clock P.M. on October 29, 1941. Frank Poewce, accompanied by Helen Toane and Ninip Toane—all three of them tribal Indians—was driving a 1934 Chevrolet truck loaded with long poles. The truck proceeded in a southerly direction on a highway paralleling the east side of the railroad track. At a certain point the highway turns at a right angle to cross the track. As the truck approached this point the driver slowed down, shifted into low gear, and turned to make the crossing at a speed of five miles per hour. The distance to the track from the point of turning was 27 feet.

As the truck reached the nearest rail Helen Toane cried out that a train was coming. The driver continued onward until a position was reached where the headlights of the truck were in line with the farthest rail and the cab was on the track, at which point the motor stalled and the driver could not start it again. The train was then about 200 yards away, approaching from the north at a speed of about 40 miles per hour, with whistle blowing and bell ringing. When the engineer observed the situation he put the brakes in emergency but was unable to avoid a collision. Both engineer and brakeman testified, in effect, that the truck could have crossed the tracks in safety had it not become stalled.[1]

In the ensuing collision Helen Toane and Ninip Toane were killed and Poewee was injured. The jury awarded damages of $1,250 for the death of Helen Toane, a like sum for the death of Ninip Toane, and $2,000 for injuries sustained by Poewee.

The court instructed the jury that the Act does not contemplate or require the payment of damages if the conduct of the Indians themselves was the proximate cause of the injury. The jury was told that "the proximate cause of any injury is a cause which in its natural and continuous sequence, unbroken by any new cause, produces an event, and without which the event would not have occurred." This definition was taken from an instruction proposed by appellants.

It is appellants' theory that the proximate cause of the injury was the conduct of the driver in undertaking to cross the railroad track without first having stopped to observe whether a train was approaching. Deeming the question to be one of law, appellants moved for a directed verdict on that ground. Upon denial of the motion they requested two instructions enlarging upon the theory. A chief argument for reversal is predicated on the refusal of the court to give these instructions. On the other hand, counsel for the United States contend that the trial court was in error in its interpretation of the statute. They say that even if negligent conduct on the part of the Indians was the proximate cause of the collision, which they deny, appellants were nevertheless liable for the resulting damage.

While it is essential at all times to remember the underlying purpose of this special statute, we think it unnecessary in the present instance to consider the government's point. Here the jury was entitled to find that the proximate cause of the injury was the accidental stalling of the motor, rather than negligence in crossing. The Indians were not trespassers on the railroad track. They had the right to cross it. The jury evidently believed—and it was warranted in believing—that no collision would have occurred had not the motor accidentally become stalled. To put it another way, the Indians were not conclusively shown to have brought about their own injury by their failure to stop, look and listen before going upon the track. The instructions asked for improperly assumed the contrary.

On this phase of the case we conclude that the jury was entitled to attribute the injury to inevitable accident. Cf. United States v. Oregon Short Line Railroad Co., supra.

[1] The brakeman testified that the driver of the truck "had time to go across I think but he drove up and stopped with the cab right on the railroad track."

In ruling on evidence and in its instructions to the jury in respect of the deaths of Helen and Ninip Toane the court limited recovery to "the reasonable expectation of pecuniary benefits to particular individuals." The jury was told that there could be no recovery on account of physical suffering of the deceased, or because of loss of companionship, and that any award for funeral expenses must be limited to such as were reasonable and as were found to have been paid or payable by the beneficiaries. On the case as so submitted it is claimed that the evidence is insufficient to support the amounts awarded on account of the deaths of these two Indians.

 Helen Toane's mother, a woman past eighty years of age, testified that Helen had given her money and food at various times, the amount of money contributed being described as "maybe better than a hundred dollars." Helen was accustomed, also, to buy groceries for her mother at intervals ranging from two weeks to two months and in amounts of about $20. Sometimes she bought the mother a shawl. Ninip Toane's father, who lived with a daughter, testified that Ninip "contributed very little" to his support. Ninip Toane appears to have survived for an appreciable time after the accident. In his case it was shown that funeral and burial expenses in amounts totaling about $275 were incurred by or paid out of his estate. There was evidence of the funeral customs of the tribe and of the reasonableness of these expenses. While appellants contend that such expenses are not recoverable, there is nothing in the Act to militate against such recovery and there is much general authority favorable to the recovery of legitimate outlays of this nature. Cf. Jutila v. Frye, 9 Cir., 8 F.2d 608, 609; Hartman v. Gas Dome Oil Co., 50 Idaho 288, 295 P. 998.

 The statute involved is sui generis. Section 14 requires the furnishing by the railway company of a bond to the United States, for the use and benefit of the Shoshone and Bannock Tribes, "conditioned for the due payment of any and all damages which may accrue by reason of the killing or maiming of any Indian belonging to said tribes," in the operation of the railway. The language employed is amply broad to comprehend the payment of all direct damages, including damages for loss of companionship in event of the killing of so close a relative as a son or daughter.[2] We think the jury should have been permitted to take this factor into consideration in arriving at the amount of its award.

 Even as the matter stands the sums awarded for the deaths of these Indians are not excessive when judged by ordinary standards. The trial judge apparently was of that opinion, since notwithstanding the restrictive view entertained by him he denied appellants' motion for a new trial. There is no indication that the jury acted under the influence of passion or prejudice. Cf. Southern Ry.-Carolina Co. v. Bennett, 233 U.S. 80, 86, 87, 34 S.Ct. 566, 58 L.Ed. 860; Western Gas Construction Co. v. Danner, 9 Cir., 97 F. 882, 890; Arizona & N. M. Ry. Co. v. Clark, 9 Cir., 207 F. 817, 824.

Affirmed.

---

[2] For what it may be worth we call attention to an Idaho Statute, § 5-311 Idaho Code Annotated, providing that in actions for wrongful death "such damages may be given as under all the circumstances of the case may be just." This statute is interpreted as permitting recovery for loss of companionship. Hepp v. Ader, Idaho 1942, 130 P.2d 859.